Nos. 23-1475, -1533

APPLE INC.,

*Appellant,*

LG ELECTRONICS INC., LG ELECTRONICS USA, INC.,
GOOGLE LLC,

*Appellees,*

*v.*

GESTURE TECHNOLOGY PARTNERS, LLC

*Cross-Appellant.*

On Appeal from the United States Patent & Trademark
Office, Patent Trial & Appeal Board, Nos. IPR2021-00920,
IPR2022-00091, IPR2022-00359

**REPLY BRIEF OF APPELLANT APPLE INC. AND
RESPONSE BRIEF OF APPLE INC., LG ELECTRONICS INC.,
LG ELECTRONICS USA, INC., AND GOOGLE LLC**

Stanley Joseph Panikowski, III
DLA PIPER US LLP
4365 Executive Drive, Suite 1100
San Diego, CA 92121

*Counsel for LG Electronics Inc.
and LG Electronics USA Inc.*

Erika Arner
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001

*Counsel for Google LLC*

Melanie L. Bostwick
Abigail Colella
Jonas Q. Wang
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

*Counsel for Apple Inc.*

*Additional Counsel on Inside Cover*

Matthew D. Satchwell
DLA Piper US LLP
Suite 900
444 West Lake Street
Chicago, IL  60606

*Counsel for LG Electronics Inc. and
LG Electronics USA Inc.*

Daniel Cooley
Finnegan, Henderson, Farabow,
   Garrett & Dunner, LLP
Suite 800
1875 Explorer Street
Reston, VA  20190

*Counsel for Google LLC*

Elizabeth R. Moulton
Orrick, Herrington &
   Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105

Paul R. Hart
Erise IP, P.A.
5299 DTC Blvd.
Suite 1340
Greenwood Village, CO 80111

Adam P. Seitz
Clifford T. Brazen
Erise IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211

*Counsel for Apple Inc.*

# CLAIM LANGUAGE AT ISSUE

## U.S. Patent No. 7,933,431

## Representative Claims 1, 7, 11, 12, 13, 14

**1.** A method for controlling a handheld computing device comprising the steps of:

>  holding said device in one hand;

>  moving at least one finger in space in order to signal a command to said device;

>  electro-optically sensing light reflected from said at least one finger using a sensing means associated with said device;

>  determining from said sensed light the movement of said finger, and

>  using said sensed finger movement information, controlling said device in accordance with said command.

**7.** Handheld computer apparatus comprising:

>  a housing;

>  a camera means associated with said housing for obtaining an image using reflected light of at least one object positioned by a user operating said object;

>  computer means within said housing for analyzing said image to determine information concerning a position or movement of said object; and

>  means for controlling a function of said apparatus using said information.

**11.** Apparatus according to claim 7, further including means for transmitting information.

**12.** Apparatus according to claim 7, further including a light source for illuminating said object.


**13.** Apparatus according to claim 7, wherein said apparatus is a cellular phone.


**14.** A method for controlling a handheld computing device comprising the steps of:

   providing a computer within said device;

   associating a camera with said device, said camera viewing at least a portion of the body of a user operating said device or an object held by said user, in order provide image data concerning said portion or object;

   using said computer, analyzing said image data to determine information concerning a user input command;

   and

   from said determined information, controlling a function of said device.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## AMENDED <u>CERTIFICATE OF INTEREST</u>

**Case Number**  23-1475, -1533

**Short Case Caption**  Apple Inc. v. Gesture Technology Partners, LLC

**Filing Party/Entity**  Apple Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date  January 19, 2024

Signature:  /s/ Melanie L. Bostwick

Name:  Melanie L. Bostwick

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Apple Inc. | None | None |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

v

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**     23-1475, 23-1533

**Short Case Caption**     Apple Inc. v. Gesture Technology Partners, LLC

**Filing Party/Entity**     LG Electronics Inc.; LG Electronics USA, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date:   01/19/2024

Signature:   /s/ Stanley J. Panikowski

Name:   Stanley J. Panikowski

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| LG Electronics Inc. | | None |
| LG Electronics USA, Inc. | | LG Electronics Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable        ☐  Additional pages attached

| | | |
|---|---|---|
| Gianni Minutoli | | |
| Paul Steadman | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable        ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1475, 2023-1533

**Short Case Caption** Apple Inc. v. Gesture Technology Partners, LLC

**Filing Party/Entity** Google LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/19/2024

Signature: /s/ Daniel C. Cooley

Name: Daniel C. Cooley

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☐ None/Not Applicable |
| Google LLC | | XXVI Holdings Inc. |
| | | Alphabet Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

x

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Mingi Jin | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

CERTIFICATES OF INTEREST .................................................iii

TABLE OF AUTHORITIES ................................................... xiv

STATEMENT OF RELATED CASES .................................... 1

INTRODUCTION .................................................................. 2

STATEMENT OF THE ISSUES ON GESTURE TECHNOLOGY'S CROSS-APPEAL ................................................................ 5

SUMMARY OF ARGUMENT ON GESTURE TECHNOLOGY'S CROSS-APPEAL ................................................................ 6

ARGUMENT ...................................................................... 10

    I.    The Board Erred In Failing To Hold Claims 11 And 13 Unpatentable....................................................... 10

        A.    The Board applied the wrong legal standard for obviousness, and improperly ignored Apple's arguments and evidence, in upholding the patentability of claims 11 and 13. ............................... 12

        B.    Apple has standing to appeal the Board's determination regarding claims 11 and 13................. 23

            1.    This Court should reject Gesture Technology's untimely estoppel argument as forfeited. ............................................... 24

            2.    Regardless, Gesture Technology's estoppel argument lacks merit. ........................................ 29

    II.    The Board Correctly Held Every Other Claim Of The '431 Patent Unpatentable..................................... 35

        A.    The Board correctly found independent claim 1 unpatentable. ............................................... 37

        B.    The Board correctly found independent claims 7 and 14 unpatentable.................................... 48

        1.    The Board correctly found that Numazaki discloses the "camera means" recited in limitations 7(b) and 14(b). .................................. 48

        2.    The Board correctly found that Numazaki discloses the "computer means" recited in limitations 7(c) and 14(c). .................................. 56

   C.   The Board correctly found dependent claim 12 unpatentable. ............................................................ 62

        1.    The Board correctly construed the "light source for illuminating said object" to have its ordinary meaning. ......................................... 64

        2.    Substantial evidence supports the Board's finding that Numazaki discloses the light source of claim 12. ............................................ 69

III.   The Board Had Jurisdiction Over The Expired '431 Patent. .................................................................... 72

CONCLUSION ......................................................................... 77

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
   659 F.3d 1121 (Fed. Cir. 2011) ........................................................... 59

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
   949 F.3d 1360 (Fed. Cir. 2020) ..................................................... 24, 26

*Applications in Internet Time, LLC v. RPX Corp.*,
   897 F.3d 1336 (Fed. Cir. 2018) ............................................... 29, 30, 33

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006) ............................................................ 66

*Collabo Innovations, Inc. v. Sony Corp.*,
   778 F. App'x 954 (Fed. Cir. 2019) ..................................................... 76

*Cuozzo Speed Techs., LLC v. Lee*,
   579 U.S. 261 (2016) .............................................................................. 72

*Dow Jones & Co. v. Ablaise Ltd.*,
   606 F.3d 1338 (Fed. Cir. 2010) ........................................................... 13

*Genetics Inst. v. Novartis Vaccines*,
   655 F.3d 1291 (Fed. Cir. 2011) ........................................................... 75

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. eBay Inc.*,
   798 F. App'x 616 (Fed. Cir. 2020) ..................................................... 25

*In re Google Tech. Holdings LLC*,
   980 F.3d 858 (Fed. Cir. 2020) ..................................... 24, 27, 43, 52, 55

*KCJ Corp. v. Kinetic Concepts, Inc.*,
   223 F.3d 1351 (Fed. Cir. 2000) ..................................................... 40, 61

*Kegel Co. v. AMF Bowling, Inc.*,
   127 F.3d 1420 (Fed. Cir. 1997) ........................................................... 15

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
797 F.3d 1025 (Fed. Cir. 2015) .......................................... 73

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .................................................... 12, 13

*Leatherman v. Tarrant Cnty. Narcotics Intel. &*
*Coordination Unit*,
507 U.S. 163 (1993) ...................................................... 74

*Littelfuse, Inc. v. Mersen USA EP Corp.*,
29 F.4th 1376 (Fed. Cir. 2022) ......................................... 67

*M.R. Pittman Grp., LLC v. United States*,
68 F.4th 1275 (Fed. Cir. 2023) ..................................... 28, 65

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) ......................................... 73

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
357 F.3d 1340 (Fed. Cir. 2004) ......................................... 68

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) ......................................... 24

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ..................................... 16, 21

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
138 S. Ct. 1365 (2018) .................................................. 73

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ............................... 52, 66, 67

*Power Integrations, Inc. v. Lee*,
797 F.3d 1318 (Fed. Cir. 2015) ......................................... 16

*Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945) ...................................................... 72

*Randall Mfg. v. Rea,*
733 F.3d 1355 (Fed. Cir. 2013) .................................................. 13, 17

*Realtime Data, LLC v. Iancu,*
912 F.3d 1368 (Fed. Cir. 2019) ............................. 17, 18, 19

*Roku, Inc. v. Universal Elecs., Inc.,*
63 F.4th 1319 (Fed. Cir. 2023) .............................................. 42

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,*
242 F.3d 1337 (Fed. Cir. 2001) .............................................. 68

*SmithKline Beecham Corp. v. Apotex Corp.,*
439 F.3d 1312 (Fed. Cir. 2006) .............................................. 50

*Sony Corp. v. Iancu,*
924 F.3d 1235 (Fed. Cir. 2019) .............................................. 75

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
299 F.3d 1313 (Fed. Cir. 2002) .............................................. 67

*Uniloc 2017 LLC v. Facebook Inc.,*
989 F.3d 1018 (Fed. Cir. 2021) .......................................... 30, 33

*VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*
778 F. App'x 897 (Fed. Cir. 2019) ...................................... 31, 33

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.,*
853 F.3d 1272 (Fed. Cir. 2017) .............................................. 75

*In re Watts,*
354 F.3d 1362 (Fed. Cir. 2004) .......................................... 26, 27

*WesternGeco LLC v. ION Geophysical Corp.,*
889 F.3d 1308 (Fed. Cir. 2018) ...................................... 30, 31, 33

## Statutes

35 U.S.C. § 2(a)(1) ...................................................................... 74

35 U.S.C. § 112(f) .................................................................. 48, 57

35 U.S.C. § 286 ......................................................................... 73

35 U.S.C. § 311 ......................................................................... 74

35 U.S.C. § 315(a) ..................................................................... 74

35 U.S.C. § 315(b) ............................................................... 29, 74

35 U.S.C. § 315(e) ..................................................................... 29

35 U.S.C. § 315(e)(1) ................................................................. 23

## Rules & Regulations

37 C.F.R. § 1.510(a) (1981) ....................................................... 76

Fed. R. App. P. 28.1(c)(4) .......................................................... 28

## Other Authorities

*Apple Inc. v. MemoryWeb, LLC*,
   IPR2022-00031, Paper 85 (P.T.A.B. Dec. 8, 2023) ............................. 26

*Funai Elec. Co. v. Gold Charm Ltd.*,
   No. IPR2015-01468, 2016 WL 7995297 (P.T.A.B. Dec. 27,
   2016) ................................................................................. 25

*General Plastic Indus. Co. v. Canon*
   No. IPR2016-01357, 2017 WL 3917706 (P.T.A.B. Sept. 6,
   2017) ............................................................................ 27, 28

Manual of Patent Examining Procedure § 2211 (4th ed. July
   1981), https://tinyurl.com/z66kxx4n ........................................... 76

*Samsung Elecs. Co. v. MemoryWeb, LLC*,
   No. IPR2022-00222, Ex. 2121 (P.T.A.B. Dec. 22, 2023) ...................... 33

*Unified Patents Inc. v. Mobility Workx, LLC*,
   IPR2018-01150, 2019 WL 6481774 (P.T.A.B. Dec. 2, 2019) ............... 25

*Unified Patents Inc. v. Nonend Inventions N.V.*,
   IPR2016-00174, Paper 26 (P.T.A.B. May 8, 2017) ........................... 25

*Unified Patents, LLC v. MemoryWeb, LLC,*
No. IPR2021-01413, Paper 56 (P.T.A.B. Mar. 8, 2023) ..................... 27

*Unified Patents v. JustService.net LLC,*
IPR2020-01258, 2022 WL 494800 (P.T.A.B. Feb. 16, 2022) ............. 25

# STATEMENT OF RELATED CASES

No appeal in or from the same proceeding has previously been before this or any other appellate court.

This Court's decision may directly affect or be directly affected by the following cases that involve the same patent at issue in this appeal:

*Gesture Tech. Partners, LLC v. Apple, Inc.*, No. 4:22-cv-04806 (N.D. Cal.); *Gesture Tech. Partners, LLC v. LG Elecs., Inc. et al.,* No. 2:21-cv-19234 (D.N.J.); *Gesture Tech. Partners LLC v. Motorola Mobility LLC*, No. 1:22-cv-03535 (N.D. Il.); *Gesture Tech. Partners, LLC v. Lenovo Grp. Ltd. et al.*, No. 6:21-cv-00122 (W.D. Tex.); *Ex Parte* Reexamination No. 90/014,901 of U.S. Patent No. 7,933,431, before the U.S. Patent Office (reexam ordered Jan. 11, 2022).

The Court's decision may also directly affect or be directly affected by the following co-pending appeals involving other patents owned by Gesture Technology, which this Court has designated as companion cases to this appeal: *Gesture Tech. Partners, LLC v. Unified Patents, LLC,* No. 23-1444 (Fed. Cir.); *Apple Inc. v. Gesture Tech. Partners LLC*, No. 23-1494 (Fed. Cir.).

# INTRODUCTION[1]

Gesture Technology's appellate arguments provide no basis to save the patentability of any of the claims of U.S. Patent No. 7,933,431.

***Apple's appeal.*** As to the two dependent claims that the Board upheld, Apple's opening brief demonstrated that the Board fundamentally misconstrued Apple's argument and the law of obviousness by demanding an express teaching in the prior art rather than accounting for the knowledge of a person of ordinary skill in the art. Apple showed that a person of ordinary skill would have understood to implement certain embodiments of the Numazaki prior-art reference in a cellular phone, as claims 11 and 13 of the '431 patent require. The Board, however, demanded an explicit teaching that Numazaki's embodiments *were themselves* a cellular phone. Apple's opening brief showed that this was legal error warranting reversal.

Gesture Technology's response fails to acknowledge—let alone refute—Apple's demonstration of the Board's legal error. Instead, it

---

[1] LG and Google, petitioners before the Board and appellees here, join only the portions of this brief addressing Gesture Technology's cross-appeal. *Infra* Parts II & III.

effectively treats Apple's arguments as a substantial-evidence challenge, relies heavily on pages worth of block quotes from the Board's decision and Gesture Technology's briefing, and invokes factual contentions that the Board did not adopt. None of Gesture Technology's arguments, however, shows the Board applying the undisputed legal standard to Apple's obviousness challenge.

Instead of meaningfully engaging with Apple's arguments, Gesture Technology leads with a request that the Court not consider Apple's arguments at all. Pressing an argument that it never raised below, Gesture Technology asserts that Apple is estopped from seeking further review of claims 11 and 13 by virtue of its membership in Unified Patents, a separate entity that has separately challenged the '431 patent. But Gesture Technology's argument is too little, too late. It is too late, because this Court's and the Board's precedents require raising an estoppel argument in the patent owner response, which Gesture Technology failed to do. And it is too little, because Gesture Technology offers no evidence—because there is none—suggesting that Apple exercised the control over Unified's filing that is necessary to apply estoppel.

***Gesture Technology's cross-appeal.*** Gesture Technology offers no basis to disturb the Board's findings that Numazaki teaches the elements of the remaining 29 claims of Gesture Technology's patent.

Each of Gesture Technology's challenges to those findings ignores the disclosure of Numazaki, ignores the Board's reasoning for the findings it made, and in many cases ignores the language of the '431 patent claims. Worse still, Gesture Technology pursues new, forfeited arguments that suffer from the same flaws as the arguments it made to the Board, as well as undeveloped, drive-by substantial-evidence challenges that are effectively waived. None of Gesture Technology's arguments comes close to meeting the standard for reversal under this Court's deferential substantial-evidence review.

Finally, Gesture Technology's argument that the Patent Office lacked jurisdiction over the expired '431 patent is also meritless. The Supreme Court and this Court's precedents have recognized that inter partes review concerns the public right of patent monopolies, which is enforced even after expiration through damages suits for infringement—like the ones Gesture Technology is currently pursuing on the '431 patent.

The Court should reverse, or at minimum vacate, the Board's decision on claims 11 and 13, and should affirm in all other respects.

## STATEMENT OF THE ISSUES ON GESTURE TECHNOLOGY'S CROSS-APPEAL

1.      Whether substantial evidence supports the Board's determination that independent claim 1 is unpatentable as obvious, where Gesture Technology's only challenges to that determination depend on either (1) drawing a rigid line between Numazaki's multiple embodiments, despite Numazaki expressly linking those embodiments, or (2) imposing limitations that do not exist in the claim.

2.      Whether substantial evidence supports the Board's determination that independent claims 7 and 14 are unpatentable as obvious, where Gesture Technology's arguments once again fight both the disclosure of Numazaki and the language of the claims, without engaging with the evidentiary basis for the Board's findings.

3.      Whether substantial evidence supports the Board's determination that dependent claim 12 is unpatentable as obvious, where the Board correctly construed "the light source for illuminating said object" to have its plain and ordinary meaning, with no added

limitation that the light source be on at all times, and where the prior art discloses using a camera to determine a gesture illuminated by a lighting unit.

4. Whether the Patent Office had jurisdiction over the expired '431 patent, which Gesture Technology is currently asserting in infringement litigation despite its suggestion to this Court that it no longer has a right to exclude.

## SUMMARY OF ARGUMENT
## ON GESTURE TECHNOLOGY'S CROSS-APPEAL

**II.A.** The Board's determination that independent claim 1 is unpatentable is supported by substantial evidence. The Board correctly determined that the prior art renders obvious each of the limitations of claim 1, reciting steps of moving a finger in space to signal a command to the device, "electro-optically sensing" light reflected from that finger, and "determining" from that sensed light the movement of the finger. Petitioners demonstrated, and the Board agreed, that the prior-art Numazaki reference discloses each of these limitations. Gesture Technology's main argument to the contrary rehashes one of the same flawed arguments it made before the Board, which ignores Numazaki's

disclosure that its eighth embodiment uses the same photo-detection components as its first embodiment. Gesture Technology also asserts new arguments on appeal that, even if they were not forfeited, fare no better because they similarly overlook the plain disclosure of Numazaki, the claim language, and settled law.

**II.B.** The Board's determination that independent claims 7 and 14 are unpatentable is also supported by substantial evidence. The Board correctly determined that Numazaki teaches the claimed "camera means" or "camera" by virtue of the two-photo-detection units housed within its reflected light extraction unit. II.B.1. Gesture Technology's attempt to distinguish the "photo-detection sensor unit" of Numazaki's eighth embodiment from the "photo-detection section" and "photo-detection units" of Numazaki's first embodiment repeats its misunderstanding of Numazaki's incorporation of the first embodiment into the eighth. Gesture Technology's remaining arguments are forfeited and meritless; like its other arguments, these challenges ignore Numazaki's disclosure and defy settled principles such as the presumption that "a" in a claim language means "one or more."

The Board's determination that Numazaki discloses the additional "computer means" or "computer" limitations in independent claims 7 and 14 is likewise supported by substantial evidence. II.B.2. The Board correctly found that Numazaki's feature data generation unit corresponds to the computer means. Gesture Technology argues that Numazaki implements the feature data generation unit as hardware, not software. But the Board correctly concluded, relying in part on Gesture Technology's own concession, that the feature data generation unit can be implemented by software. Gesture Technology offers no basis to disturb that finding. Gesture Technology's attack on Numazaki's disclosure of the analysis function of the computer means also fails, because it ignores the claim language, the Board's mapping of that language to Numazaki's components, and settled case law.

**II.C.** The Board correctly construed dependent claim 12, which recites a "light source," by giving the term its plain and ordinary meaning. II.C.1. And the Board's determination that claim 12 is unpatentable is supported by substantial evidence. II.C.2. As to claim construction, the Board correctly found that the plain language of claim 12 contains no requirement that the light be on every time the camera

captures an image of the object. Gesture Technology's convoluted argument referring back to independent claim 7 is wrong and, if accepted, would render claim 12 meaningless (and therefore invalid). Gesture Technology cites nothing in the '431 patent specification that would lead a skilled artisan to understand that the claim excluded strobing or intermittent illumination. And, on the substance, the Board correctly determined that Numazaki discloses the light source of claim 12. Numazaki discloses one of its cameras imaging the object when the lighting unit is on, as Gesture Technology does not dispute. Gesture Technology's attempt to distinguish Numazaki's use of a two-camera structure from the claimed light source simply resists the Board's claim construction.

**III.** The Board had jurisdiction over the expired '431 patent. Gesture Technology's assertion that the Patent Office's jurisdiction ends with the expiration of a patent is contrary to the Supreme Court's and this Court's precedent and fundamentally misconstrues the constitutional role of the Patent Office and its historical practice. At least as long as Gesture Technology is able to enforce the patent in infringement litigation—as it is presently attempting to do—its

continued monopoly rights ensure the Board's jurisdiction to determine whether that monopoly should have been granted at all.

## ARGUMENT

### I. The Board Erred In Failing To Hold Claims 11 And 13 Unpatentable.

Apple's opening brief demonstrated that the Board's analysis of claims 11 and 13 was fundamentally flawed: despite initially recognizing the nature of Apple's argument, the Board in its final written decision applied the wrong legal standard for obviousness and therefore neglected much of Apple's evidence. Gesture Technology fails to show otherwise. Instead, Gesture Technology effectively treats Apple's argument as a substantial-evidence challenge, and argues— mostly through large block quotes and screenshots of the Board's decision or Gesture Technology's patent owner response—that the Board considered all the evidence of record. *See* GT Br. 25-36; *id.* at 36 (arguing that Board's decision was "supported by substantial evidence and should be affirmed"). The problem, however, is not whether the Board considered all the evidence. The problem is the legal standard that it applied when it did so. Gesture Technology fails to overcome

Apple's showing that the Board applied the wrong legal standard and that reversal is warranted. *Infra* I.A.

Gesture Technology instead focuses on a new argument challenging Apple's standing to pursue this appeal. Gesture Technology's argument was not raised to the Board and is, accordingly, forfeited. *Infra* I.B.1. It is also meritless. There is not a shred of evidence supporting Gesture Technology's assertion that Apple is a real party in interest or privy in a separate proceeding brought by Unified Patents. That is unsurprising, given Gesture Technology's failure to pursue this argument before the Board and develop a factual record accordingly. Gesture Technology instead relies on material from other Board proceedings, none of which ended with a finding that Unified's members are real parties in interest in Unified's independent filings or that they are in privity with Unified. Gesture Technology comes nowhere near showing that Apple or any other member of Unified exercises the kind of control that is necessary for a real-party-in-interest or privy finding. *Infra* I.B.2.

The Court should reverse the Board's decision upholding claims 11 and 13 of the '431 patent.

**A.    The Board applied the wrong legal standard for obviousness, and improperly ignored Apple's arguments and evidence, in upholding the patentability of claims 11 and 13.**

In its opening brief, Apple demonstrated the legal flaws in the Board's analysis of dependent claims 11 and 13, which require the apparatus of claim 7 to include a cellular transceiver or to be a "cellular telephone." Appx74 26:12-13; Appx74 26:16-17; *see* OB18 & n.3. The problem, as Apple explained, was that the Board focused on whether Numazaki expressly discloses a cellular phone, rather than addressing Apple's argument: "a single-reference obviousness theory that demonstrated, with supporting evidence, how a person of ordinary skill in July 1999 would have interpreted Numazaki's disclosure of a 'TV telephone' as a cellular phone (with a cellular transceiver) based on the state of the art at the time." OB28-29. The Board's error, Apple further demonstrated, was both a legal defect and a procedural one. An obviousness analysis does not require express disclosure or "precise teachings" but must "take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (cited at OB31); *see generally*

OB30-39.  And, because the Board addressed an argument Apple had

not made, and ignored the one it had, it committed procedural error

under the Administrative Procedure Act.  *See generally* OB39-43.

Gesture Technology's response does not seriously engage with

either of these arguments.  Gesture Technology does not dispute the

nature of Apple's obviousness argument; it agrees that Apple's petition

depended not on Numazaki alone but on "*Numazaki* and the knowledge

of a PHOSITA."  GT Br. 34.

Gesture Technology also does not dispute that Apple is correct

about the legal standard applicable to that argument.  Nor could it.

Congress, the Supreme Court, and this Court have all been clear that

an obviousness analysis "requires an assessment of the 'interrelated

teachings of [the prior art]; the effects of demands known to the design

community or present in the marketplace; and the background

knowledge possessed by a person having ordinary skill in the art.'"  *Dow*

*Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1349 (Fed. Cir. 2010)

(quoting *KSR*, 550 U.S. at 401, alteration in *Dow Jones*); *see also* OB30-

31; *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (Board is

required to "read[] the prior art in context," considering not only "the

disclosures of individual prior-art references" but also the "knowledge, creativity, and common sense that an ordinarily skilled artisan would have brought to bear when considering combinations or modifications").

The Board did not adhere to this standard. Instead, its decision turned on the undisputed fact that Numazaki "does not 'state that its TV telephone is a cellular phone'" or "necessarily teach[] that its fifth embodiment is a cell phone." Appx31-32 (quoting Appx167); *see also* OB36-39. Far from showing otherwise, Gesture Technology's response doubles down on the Board's error. Gesture Technology repeatedly quotes the Board applying the wrong standard. For example, Gesture Technology claims that the Board properly rejected the idea that "*Numazaki* necessarily teaches that its fifth embodiment is a cell phone." GT Br. 29 (citing Appx31-32). But Apple didn't argue that Numazaki necessarily teaches any such thing. Its argument was that a person of ordinarily skill, knowledgeable about both the state of cellular videophones at the time and the concerns applicable to this technology, would have understood that Numazaki's portable TV telephone embodiment could be a cellular videophone. *See, e.g.*, Appx165-167; Appx511-512; Appx907-908 (Bederson Decl.).

14

Similarly, Gesture Technology endorses the Board's decision to fault Apple for providing "no analysis" of whether the "transmission functionality" in Numazaki's disclosure "is an equivalent of 'a wireless cellular transceiver' or a cell phone." GT Br. 28 (citing Appx31). But no such showing is required. Although this line of the Board's opinion is unclear, Apple presumes that it invoked the "equivalent" language in view of claim 11's means-plus-function format. Claim 11 recites "means for transmitting information," which all agree "includes at least a cellular transceiver." OB18 & n.3 (quoting Appx145, Appx11). If Apple were arguing that Numazaki anticipated claim 11, Apple would have to show that Numazaki's disclosure "is" (Appx31) a cellular transceiver or the equivalent. *See, e.g.*, *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1430 (Fed. Cir. 1997). But an obviousness analysis is more expansive, and Apple properly showed that Numazaki would have suggested a cellular videophone—which undisputedly uses a cellular transceiver, Appx405-406—to a person of ordinary skill.

Gesture Technology's lone attempt to show that the Board applied the proper legal standard fails. Gesture Technology (at 28) briefly quotes the Board's recitation of two aspects of Apple's argument—that a

15

person of ordinary skill would have been motivated to implement Numazaki's fifth embodiment TV telephone functionality in its eighth embodiment portable device, and that Numazaki's focus (in connection with the fifth embodiment) on communications costs is a concern applicable to cellular phones. Appx31. To begin with, that is not a full recitation of Apple's obviousness argument; the Board's two sentences omit the critical point that a person of ordinary skill would have understood to implement the TV telephone, in its portable form, in a cellular phone, as well as the factual foundation (beyond cost concerns) for that point. *See* OB18-20 (summarizing Apple's obviousness showing).

Furthermore, the Board's recitation of *Apple's arguments* is not a substitute for the Board's own analysis. Rather, the Board's "own explanation must suffice for [this Court] to see that the agency has done its job." *In re NuVasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016); *see also, e.g.*, *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015) (Court's "review of a patentability determination is confined to 'the grounds upon which the Board actually relied'" (citation omitted)). Here, the analysis portion of the Board's opinion shows the opposite,

underscoring that it demanded an explicit disclosure of Numazaki's embodiment "being a wireless cellular transceiver or a cellular phone," Appx31, rather than considering the knowledge a person of ordinary skill would bring to bear in reading Numazaki. Indeed, the Board apparently found it an irreconcilable conflict that Apple both admitted that Numazaki "does not 'state that its TV telephone is a cellular phone'" and argued that a person of ordinary skill would know to implement the TV telephone in a cellular phone. Appx31-32 (quoting Appx167). But that is exactly the kind of "blinkered focus on individual documents" that is improper in an obviousness inquiry. *Randall Mfg.*, 733 F.3d at 1362.

Apple demonstrated the point by invoking this Court's decision in *Realtime Data, LLC v. Iancu*, 912 F.3d 1368 (Fed. Cir. 2019), as "the kind of showing that has been found sufficient to demonstrate obviousness." OB35. In addressing *Realtime*—the only time in its brief that Gesture Technology engages with Apple's cited authority—Gesture Technology misstates both Apple's argument and this Court's case law. *See* GT Br. 35.

17

In *Realtime*, the Board analyzed a reference (O'Brien) that disclosed what was substantively a dictionary encoder even though the reference did not use that term. 912 F.3d at 1372-73. Gesture Technology is correct that the patent owner in that case conceded that O'Brien substantively disclosed dictionary encoding. GT Br. 36. But the patent owner nonetheless argued that O'Brien alone could not show obviousness, and that the petitioner instead had to show (and the Board had to find) a motivation to combine O'Brien with another reference, the Nelson textbook. 912 F.3d at 1373. This Court rejected that argument, because the petitioner "relied on Nelson merely to explain that O'Brien's encoder is a type of dictionary encoder." *Id.* In other words, the petitioner in *Realtime* sought to use Nelson in the same way Apple sought to use the New York Times article here—to demonstrate what a person of ordinary skill would have had in mind when reviewing the prior-art reference that is the basis of the obviousness ground. *See* OB35-36; Appx409-411; Appx512; Appx906-908.

Gesture Technology fights a contention about *Realtime* that Apple did not make. It argues that the Court did not find that O'Brien itself made clear the link between string encoding (which O'Brien disclosed)

18

and dictionary encoding (which the challenged claims required). GT Br. 36. But Apple didn't suggest otherwise. In the actual text of Apple's brief, which Gesture Technology selectively edits, Apple correctly described the *Realtime* petitioner as relying on "a data-compression textbook"—that is, the Nelson reference—as "ma[king] clear [that] link." OB35; *see Realtime*, 912 F.3d at 1373 (identifying "[t]he sole purpose for which [petitioner] relied on Nelson," namely, "to demonstrate that O'Brien disclosed a dictionary encoder"). Gesture Technology's complaint—belied by its "*But cf.*" cite to *Realtime*, GT Br. 36—underscores the error Apple is trying to identify in the Board's analysis. The prior-art reference—here, Numazaki—does not have to expressly disclose a challenged claim limitation to render that limitation obvious. If the evidence shows that a person of ordinary skill would find the extra creative step obvious, that is enough.

That is the issue the Board here failed to consider, and the reason why its decision is flawed. Gesture Technology pretends otherwise, arguing that the Board "found that the *New York Times* article does not make clear the link between *Numazaki* TV telephone and the Kyocera phone discussed in the article." GT Br. 36. To begin with, the relevant

19

link is not between Numazaki's embodiment and the specific Kyocera phone discussed in the New York Times article—it is the article that demonstrates the link between Numazaki's disclosure and a skilled artisan's knowledge of cellular videophones generally. *See* OB33-34; OB46-47; Appx410-411. Moreover, the Board did not make even the flawed finding that Gesture Technology attributes to it—which is why Gesture Technology does not cite or quote the Board's opinion when proposing this supposed finding. Instead, as Gesture Technology's brief makes clear (at 36), the Board found only that the New York Times article did not support a "broad assertion that 'videoconference telephones were also known as cellular videophones.'" Appx32 (quoting Appx906). The Board made no finding about the separate showing by Apple and its expert, Dr. Bederson, that the article was evidence that skilled artisans "would have known that researchers were working on [cellular videophone] technology," Appx907-908—and thus that it served as the link between the prior-art disclosure and the claim language to support a finding of obviousness like the one in *Realtime*.

Gesture Technology tries to backfill the Board's reasoning by cutting and pasting a four-page excerpt from its patent owner response,

and suggesting the Court can attribute Gesture Technology's reasoning to the Board simply because the Board at one point cited those pages. *See* GT Br. 31-34.  To begin with, there is no suggestion (and Gesture Technology fails to show) that the Board actually relied on all of the evidence and reasoning in these four pages of Gesture Technology's brief simply by citing those pages without further discussion or endorsement.  *See, e.g.*, *NuVasive*, 842 F.3d at 1384 (refusing to assume that Board adopted party's arguments when it "neither expressly did so nor provided reasoned explanations for crediting the arguments").  On the contrary, as Gesture Technology concedes (at 31), the Board cited this part of Gesture Technology's response in support of its flawed finding that Apple had failed to demonstrate that Numazaki's embodiments were "equivalent" to a cellular transceiver or cell phone. Appx31.

Regardless, Gesture Technology's argument in its patent owner response, which Gesture Technology elaborates on in its brief (at 34-35), does not undermine Apple's showing of what a person of ordinary skill in 1999 would have known.  Gesture Technology pointed out that the commercial cellular videophone discussed in the New York Times

article (1) was not commercially available as of the '431 patent's priority date and (2) used a lower video rate (2 frames per second) than Numazaki's TV telephone embodiment (30 frames per second). *See* GT Br. 33-35. But as Apple already explained, these facts are irrelevant. Apple was not arguing that a person of ordinary skill would understand Numazaki to disclose the specific commercial embodiment discussed in the New York Times article. Apple's point, supported by its expert's testimony, was that the article was evidence that "artisans were working on cellular videophones at the time." *See* OB46 (quoting Appx410-411). And, even if Apple somehow had to show that one could implement Numazaki in the specific Kyocera cell phone discussed in the article, Apple provided the evidentiary basis for such a showing. *See* OB46-47. Gesture Technology has never responded to Apple's showing.

The Board did not address Apple's showing either, because it stopped its analysis after concluding that Numazaki itself did not disclose a cellular phone. That was legal error, as Apple has demonstrated. And Gesture Technology does not dispute Apple's showing that this legal error would require outright reversal, not remand. *See* OB43-48. At a minimum, however, remand is appropriate

to allow the Board to address whether the frame-rate differential somehow affects Apple's showing of obviousness, judged under the proper legal standard.

## B. Apple has standing to appeal the Board's determination regarding claims 11 and 13.

Instead of meaningfully engaging with Apple's appellate arguments, Gesture Technology tries to dissuade the Court from considering those arguments at all. Gesture Technology claims that Apple is a real party in interest or privy of Unified Patents, which also petitioned for inter partes review of claims 11 and 13 of the '431 patent and received an earlier final written decision. GT Br. 11-12, 14-25 (citing 35 U.S.C. § 315(e)(1) (estoppel provision)). It asserts that, because Apple is a member of Unified and pays a subscription fee to Unified, that Unified must have petitioned for inter partes review at Apple's behest, and that Apple should be estopped from further pursuing its own challenges to claims 11 and 13. But this estoppel contention is forfeited, as Gesture Technology never raised it before the Board. *Infra* I.B.1. Even if the argument were timely, it fails on the merits, because Gesture Technology does not provide any evidence

showing that Apple exercised any direction or control over Unified's decision to seek inter partes review.  *Infra* I.B.2.

### 1. This Court should reject Gesture Technology's untimely estoppel argument as forfeited.

Gesture Technology's argument that Apple lacks standing to appeal the Board's determination as to claims 11 and 13 is untimely. Gesture Technology never argued before the Board that Apple was a real party in interest or privy of Unified, or that Apple should be estopped from petitioning for inter partes review of the '431 patent on that basis.  *See* Appx235-269; Appx275-280; Appx328-363; Appx418-438; Appx1528-1571.  Gesture Technology's "failure to raise" its estoppel argument before the Board "compels a finding of forfeiture."  *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863-64 (Fed. Cir. 2020); s*ee Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1378 (Fed. Cir. 2023) ("Any argument not raised to the Board is forfeited, and we decline to consider it for the first time on appeal.") (citing *Google*, 980 F.3d at 863).

This Court has repeatedly applied forfeiture to reject untimely arguments on real party in interest status.  *See Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1360, 1364 (Fed. Cir. 2020)

(holding real-party-in-interest argument waived where patent owner never raised the issue before the Board); *Glob. Equity Mgmt. (SA) Pty. Ltd. v. eBay Inc.*, 798 F. App'x 616, 619-20 (Fed. Cir. 2020) (holding real-party-in-interest argument waived where patent owner failed to develop the point and produce any evidence on it before the Board). Gesture Technology does not address these holdings or make any effort to distinguish them.

Those holdings, moreover, are in accord with well-established Board precedent, which directs that a patent owner forfeits the real-party-in-interest argument when it fails to raise it at the post-institution response stage.[2]  The Board recently enforced this rule by rejecting a similar challenge to Apple's petition for inter partes review as forfeited, for failure to raise the estoppel argument in the patent

---

[2] *See, e.g.*, *Unified Patents v. JustService.net LLC*, IPR2020-01258, 2022 WL 494800, at *1 (P.T.A.B. Feb. 16, 2022) ("Patent Owner did not raise the RPI issue in its post-institution Response. We agree with Petitioner that Patent Owner has thus forfeited any RPI arguments."); *Unified Patents Inc. v. Mobility Workx, LLC*, IPR2018-01150, 2019 WL 6481774, at *1 (P.T.A.B. Dec. 2, 2019) (same); *Funai Elec. Co. v. Gold Charm Ltd.*, No. IPR2015-01468, 2016 WL 7995297, at *22 (P.T.A.B. Dec. 27, 2016) (same); *Unified Patents Inc. v. Nonend Inventions N.V.*, IPR2016-00174, Paper 26 at 6-7 (P.T.A.B. May 8, 2017) (same).

owner's response.  *Apple Inc. v. MemoryWeb, LLC*, IPR2022-00031, Paper 85 at 31 (P.T.A.B. Dec. 8, 2023).  If the Board itself would not have allowed Gesture Technology to make a late estoppel argument, this Court certainly should not.

The rationales behind this Court's precedent finding forfeiture of estoppel arguments when not raised before the Board apply here with particular force.  The failure to develop an argument and create a record before the Board on the issue undercuts the Court's meaningful appellate review.  "When a party raises arguments on appeal that it did not raise to the Board, they 'deprive the court of the benefit of the Board's informed judgment.'"  *Acoustic Tech.*, 949 F.3d at 1372 (alterations adopted); *see also In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004) (explaining the importance of "a comprehensive record that contains the arguments and evidence presented by the parties" (citation omitted)).  And here, Gesture Technology asks the Court to wade into an issue without adequate factual and argument development.

Because the estoppel analysis is fact-bound, the Court should decline to entertain the argument without the Board's initial assessment of its propriety and merits.  Gesture Technology's own

authority points to the wisdom of this rule: it relies on a now-vacated Board decision that had purported to find that Apple was a real party in interest of Unified in an unrelated patent proceeding. GT Br. 22 (citing *Unified Patents, LLC v. MemoryWeb, LLC*, No. IPR2021-01413, Paper 56 at 34 (P.T.A.B. Mar. 8, 2023); Appx2395). The Board's decision there followed many months of full fact development before the agency on the issue, including by deposition. That the Patent Office Director then vacated the decision as procedurally improper thus undermines Gesture Technology's position, because it reinforces that estoppel must be timely raised for the parties to fully air their disputes and ferret out all issues with the argument.

In any event, despite the clear forfeiture in this case, Gesture Technology provides "no reason why" the Court "should excuse [its] failure to raise th[e] argument before the Board." *Google*, 980 F.3d at 863-64 (quoting *Watts*, 354 F.3d at 1368). After all, Gesture Technology was aware of Unified's proceeding, as it was the responding party. Instead of raising the estoppel issue before the Board, Gesture Technology urged that institution be denied in Apple's proceeding under the Board's precedent in *General Plastic Industrial Co. v. Canon*, which

allows the Board to exercise its discretion to deny follow-on petitions. No. IPR2016-01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) (precedential). The *General Plastics* inquiry is wholly separate from the estoppel issue Gesture Technology now raises, however, and notably does not include an assessment of whether Apple is a real party in interest or privy of Unified. *See id.* at *7 (listing factors for considering follow-on petitions).

Having elected the *General Plastics* strategy and declined to pursue an estoppel argument before the Board, Gesture Technology should not be allowed to try a different tack on appeal—nor should it be allowed to develop new grounds for excusing its forfeiture in its reply brief, particularly because its reply must be limited to addressing issues presented by Gesture Technology's cross-appeal. *See* Fed. R. App. P. 28.1(c)(4); *cf. M.R. Pittman Grp., LLC v. United States*, 68 F.4th 1275, 1284 n.2 (Fed. Cir. 2023) ("Our law is well established that arguments not raised in the opening brief are waived." (citation omitted)).

The Court should reject Gesture Technology's estoppel argument as forfeited.

### 2. Regardless, Gesture Technology's estoppel argument lacks merit.

Even if the Court were to entertain the merits of Gesture Technology's belated estoppel argument, it fails. Gesture Technology has not come close to establishing the kind of relationship required for a real-party-in-interest or privity finding.

"The terms 'real party in interest' and 'privy of the petitioner' are not defined in the AIA," but "[t]he use of the familiar common law terms 'privy' and 'real party in interest' indicate that Congress intended to adopt common law principles to govern." *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1347 (Fed. Cir. 2018) ("*AIT*") (citation omitted) (discussing 35 U.S.C. § 315(b), which uses the same terms as § 315(e)). This Court has stressed that the analysis of both concepts is highly "'fact-dependent.'" *Id.* at 1351. Indeed, the inquiry entails a variety of considerations, such as whether the petitioner is a "for-profit company whose clients pay for its" patent challenges that "help paying members 'extricate themselves from NPE lawsuits,'" whether the petitioner discusses IPRs with members, whether petitioner files IPR petitions to benefit specific clients accused of patent infringement, and

other contextual considerations. *Id.* at 1351-52. A "key consideration of the RPI analysis" is "control." *Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018, 1028 (Fed. Cir. 2021); *see also WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1320 (Fed. Cir. 2018) (noting "control as a factor to determine privity" (citation omitted)).

This Court has rejected real-party-in-interest and privy arguments where no evidence establishes one party exercising such control over the other. In *Uniloc*, for example, the Court affirmed the Board's determination that LG was not a real party in interest or privy of Facebook, because LG and Facebook lacked a "preexisting, established relationship" to suggest that the two coordinated on their petitions for inter partes review, and the record was devoid of "any evidence that LG exercised any *control* over Facebook's decision to file for *inter partes* review." 989 F.3d at 1028-29 (emphasis added).

Likewise, in *WesternGeco*, the Court affirmed the Board's conclusion that ION, which was sued for infringement and joined an inter partes review initiated by PGS—ION's business partner—was not a privy of PGS. 889 F.3d at 1319-22. The Court reviewed a "variety of considerations" underlying the privity analysis, including the patent

owner's contentions that ION was "obligated to indemnify" PGS and that "ION and PGS continued meeting to discuss litigation strategy after the jury's verdict in the ION litigation." *Id.* at 1321-22. Despite this showing, the Court concluded that "[n]othing in the evidence shows" that "one has any control over the other," used the other "as a proxy," or that the two had a "sufficiently close" relationship. *Id.* at 1320-21. At bottom, the Court stressed, "a common desire among multiple parties to see a patent invalidated, without more, does not establish privity." *Id.* at 1321.

Similarly, in *VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, the Court affirmed the Board's determination that the petitioner's "investment manager" was not a real party in interest or privy of the petitioner. 778 F. App'x 897, 902-03 (Fed. Cir. 2019). Despite having "discretionary authority to manage the assets in [petitioner's] fund," the investment manager could not "act for, represent, bind or obligate" the petitioner in any other way. *Id.* at 903.

Gesture Technology's showing is similarly deficient. Gesture Technology asserts, based on information gleaned from publicly available sources and not through any actual discovery, a number of

factual contentions about Unified's membership structure and activities.  GT Br. 17-19.  And it pairs these assertions with speculation about Unified's conduct and motivations.  For instance, Gesture Technology states that Unified's "[m]embers pay a yearly subscription fee," and suggests that the "only reasonable explanation" for Unified's petition for inter partes review of the '431 patent was because it had "identified the lawsuit against [Apple], and filed the Unified IPR Petition in response."  GT Br. 19.  Gesture Technology, however, supplies no evidence supporting its characterization of Unified's motivations, and indeed it overlooks evidence that Unified drives its own inter partes review practices and "exercises sole and absolute discretion over its decision to contest patents through the USPTO's post-grant proceedings."  Appx2180.

Even accepting as true Gesture Technology's unfounded speculation (at 20) that Unified is "serv[ing] its members' interests" in filing petitions for inter partes review, that does not show that Unified's members control such decisions.  Absent that showing of control, this Court has never held that membership in an organization or a subscription fee alone is sufficient to establish a real-party-in-interest

or privy relationship. *See Uniloc*, 989 F.3d at 1028-29; *WesternGeco*, 889 F.3d at 1320. In *AIT*, for instance, this Court directed a remand for the Board's further consideration of the factual record after correcting the legal standard applicable to the real-party-in-interest and privy analysis. 897 F.3d 1358. Despite noting "RPX's offering of patent validity challenges to its fee-paying members," the Court did not find this fact sufficient to support a real-party-in-interest or privy relationship determination outright. *Id.* at 1364 (Reyna, J., concurring); *see id.* at 1342 (same).

Indeed, the Court has explained that the mere fact of a payment to an entity, and even managing the assets of the recipient, is not enough to make one a real party in interest of that entity. *See VirnetX*, 778 F. App'x at 903 ("The fact that [petitioner's investment manager] transmitted some of [petitioner]'s money that it was managing to pay for these petitions is not evidence that [the investment manager] exercised any control over these proceedings.").

The Board recently reached a similar conclusion in *Samsung Electronics Co. v. MemoryWeb, LLC*, No. IPR2022-00222, Ex. 2121 at 53 (P.T.A.B. Dec. 22, 2023) (redacted Final Written Decision). Having

been sued for infringement, Samsung petitioned for inter partes review of the patent, after Unified had already filed its own petition challenging the same patent. *Id.* at 2-3. The patent owner argued that Samsung should be estopped from pursuing its petition because, it said, Samsung was effectively an unnamed real party in interest or privy in Unified's earlier-filed proceeding. *See id.* at 20. The patent owner there, like Gesture Technology here, supported its estoppel argument by noting that Samsung is a fee-paying member of Unified and stood to benefit from Unified's petition in defending against the infringement suit. *See id.* at 26-30. The Board rejected this estoppel argument on the merits because the patent owner failed to establish the critical showing—that Samsung "communicate[d] or coordinate[d]" with Unified or that Samsung otherwise "control[led]" Unified's decision to petition for inter partes review or its conduct during the proceeding. *Id.* at 50, 53. Likewise here, Gesture Technology fails to show any communication, coordination, or control necessary to prove its assertion of a real-party-in-interest or privy relationship between Apple and Unified.

Apple has standing to appeal the Board's determination with respect to claims 11 and 13.

## II. The Board Correctly Held Every Other Claim Of The '431 Patent Unpatentable.

The Board's analysis with respect to the remaining claims of the '431 patent was grounded in the straightforward disclosure of Numazaki and supported by substantial record evidence. It turned primarily on two of Numazaki's embodiments: (A) the first embodiment, which is depicted in Figures 1 through 5 and which shows the basic elements of the inventive "information input generation apparatus," Appx761 5:7-20, and (B) the eighth embodiment, which is depicted in Figures 74 through 79 and which shows a portable device "incorporating the information input generation apparatus of the present invention," Appx783 50:19-24. *See* Appx14-16 (Board describing Numazaki's disclosure); Appx18-20 (Board describing the relation between Numazaki's first and eighth embodiments).

Gesture Technology's arguments on appeal largely hinge on ignoring the relationship between these two embodiments. Gesture Technology mainly does not dispute the Board's findings that the

components of Numazaki's information input generation apparatus map onto the elements recited in the '431 patent claims. It instead repeatedly resists the Board's finding that those components are also part of Numazaki's eighth embodiment, which—like the challenged claims—depicts a handheld device. But Numazaki is crystal clear about the relationship between those two embodiments. Gesture Technology pretends otherwise only by ignoring the Board's extensive citations to Numazaki's disclosure, which constitute more than substantial evidence supporting its finding about what this prior-art reference discloses.

The Board's indisputably correct finding about the relationship of the two embodiments disposes of most of Gesture Technology's challenges to the Board's unpatentability findings. Gesture Technology's remaining arguments depend on adding limitations that do not appear in the claim language, limiting the word "a" to "only one" without any basis for doing so, prohibiting a device from including components beyond those specifically recited in the open-ended "comprising" claims, and other basic errors of patent law. None provides any basis to disturb the Board's well-supported conclusions

that Numazaki renders claims 1-10, 12, and 14-31 of the '431 patent

obvious. The Court should affirm those conclusions.

## A. The Board correctly found independent claim 1 unpatentable.

Claim 1 of the '431 patent recites "[a] method for controlling a

handheld computing device." Appx74 25:40. As relevant to this appeal,

the claim recites steps of "moving at least one finger in space in order to

signal a command to said device"; "electro-optically sensing light

reflected from said at least one finger using a sensing means associated

with said device"; and "determining from said sensed light the

movement of said finger." Appx74 25:43-49.

Petitioners demonstrated, and the Board agreed, that Numazaki

discloses each of these limitations. As explained in Apple's opening

brief (at 9), Numazaki's eighth embodiment, shown in Figure 78 below,

depicts a portable version of the basic information input generation

apparatus described in the first embodiment and depicted, for example,

in Figures 1 and 2:



**FIG.78**

Appx733; *see* Appx784 52:5-7. Numazaki describes how a user of this portable device can move their finger (element 713) in front of a window (element 712) to signal a command to the device and thereby control the position of a cursor (element 714) on the screen. Appx784 52:14-16; *see* Appx152-153.

Numazaki also discloses that the window (element 712) in Figure 78 is "for the lighting unit and the photo-detection sensor unit." Appx784 52:12-14. As described in reference to the basic Figure 2 embodiment, "*Numazaki* uses this light and camera arrangement to illuminate the target object (e.g., the user's hand) in a controlled manner such that a precise image of the user's hand and hand

38

movement can be ascertained." Appx153 (citing Appx764 11:9-51). The "feature data generation unit" then uses this information "to determine gestures, pointing, etc. of the target object that may be converted into commands." Appx153-154 (citing Appx763 10:57-66). Petitioners demonstrated, and the Board agreed, that this disclosure teaches the "electro-optically sensing" and "determining" steps of claim 1. Appx18-22.

Gesture Technology did not dispute that Numazaki's disclosure about its first embodiment would meet the "electro-optically sensing" step of claim 1. Appx18-19. And the Board rejected Gesture Technology's attempt to distinguish the "photo-detection sensor unit" of Numazaki's eighth embodiment from the "photo-detection section" of its earlier disclosure. As the Board explained, Numazaki "makes clear that the photo-detection section of the eighth embodiment, including the 'photo-detection sensor unit' of Figure 78, incorporates the disclosure of the photo-detection section of the prior embodiments, including Figure 2." Appx20. The Board found evidence of this incorporation in Numazaki's general description of the eighth embodiment as being "directed to a system configuration incorporating the information input

generation apparatus of the present invention as described in the above embodiments." Appx783 50:21-24; *see also* Appx891-893 (Bederson Decl. ¶ 44). And it found further evidence of incorporation in Numazaki's specific reference, when discussing the eighth embodiment, to "the photo-detection section" of "[t]he above described information input generation apparatus." Appx785 53:22-23.

The Board also rejected Gesture Technology's arguments on the "determining" step. The fact that Numazaki requires the output of two photo-detection units to analyze a target object is irrelevant, as the Board explained, because there is no basis to limit the claimed "sensing means" to a single unit. Appx21; *see KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("emphasiz[ing] that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims"). Similarly, the fact that Numazaki performs the "determining" step using multiple circuitry components is

irrelevant; the open-ended claim language "does not prohibit other hardware from being involved" in the recited steps.  Appx22.[3]

On appeal, Gesture Technology raises one of the same flawed arguments it presented to the Board, as well as two new arguments that are both forfeited and wrong.

First, Gesture Technology continues to insist that there is some difference between the "photo-detection sensor unit" described in reference to Figure 78 and the "photo-detection unit" or "photo-detection section" described in reference to the basic embodiment shown, for example, in Figure 2.  *See* GT Br. 53-54.  In doing so, Gesture Technology utterly fails to address the specific disclosures in Numazaki,

---

[3] The Board seems to have been led slightly astray by Gesture Technology's confusing arguments on this issue.  As Gesture Technology recognizes (GT Br. 52), both petitioners and the Board relied on the "photo-detection sensor unit" as the "sensing means" and relied on the "feature data generation unit" as the element performing the "determining" step.  *See* Appx153-154; Appx17-18.  But, in responding to Gesture Technology's complaint about additional circuitry involved in the "determining" step, *see* Appx345, the Board instead referred to the "sensing means" and addressed whether "other hardware" beyond just "a camera" could be involved in the "electro-optically sensing" step.  Appx22.  Regardless, the substance of the Board's reasoning applies to the "determining" step as well—nothing in claim 1 even indicates that a specific part of the device performs the "determining" step, let alone limits it to one piece of circuitry.

41

cited in the Board's decision, that make this connection quite clear. *See supra* 39-40. Gesture Technology cannot possibly show that the Board's factual finding about the scope and content of the prior-art Numazaki reference was unsupported by substantial evidence if it ignores the very evidence the Board cited for that finding. *See Roku, Inc. v. Universal Elecs., Inc.*, 63 F.4th 1319, 1324-25 (Fed. Cir. 2023) (confirming that a dispute about the prior art's disclosure is a "factual dispute" that the Court reviews "for substantial evidence").

Furthermore, Gesture Technology's only basis for suggesting that the "photo-detection sensor unit" might be "unique to *Numazaki*'s eighth embodiment" (GT Br. 54) is wrong. Gesture Technology claims that "*Numazaki*'s embodiments 1-7 do not mention the 'photo-detector sensor unit.'" GT Br. 54. To begin with, Gesture Technology's own interchangeable use of the term "photo-detect<u>ion</u> sensor unit" and "photo-detect<u>or</u> sensor unit" within a single sentence of its brief belies its attempt to place significance on any similar variations in Numazaki's terminology. Gesture Technology certainly offers no substantive reason to distinguish between, for example, Numazaki's

"photo-detection units" in Figure 2 (Appx764 11:41) and its "photo-detection sensor unit" in Figure 78 (Appx784 52:13-14).

Regardless, even if identical terminology were required, Numazaki has it. In describing Figure 1—which depicts the same embodiment as Figure 2, just at a higher level—Numazaki states that the "photo-detection section" of the "reflected light extraction unit" detects received light from the target object. Appx763 10:40-46. As the Board observed (Appx20), Numazaki likewise describes its eighth embodiment (the one depicted in Figure 78) as having "the photo-detection section." Appx785 53:23. In sum, there is nothing "unclear" (GT Br. 53) about the fact that Numazaki's eighth embodiment uses the same photo-detection components as its first embodiment—Gesture Technology just refuses to acknowledge the unambiguous link.

Gesture Technology's other arguments on claim 1 are equally misguided. They are also new on appeal, and are therefore forfeited. *See, e.g.*, *Google*, 980 F.3d at 863. But, if the Court elects to consider them, it can easily reject both.

Gesture Technology first argues that Numazaki's feature data generation unit fails to satisfy the "determining" step. GT Br. 52-53.

Specifically, Gesture Technology asserts that Numazaki contains "no drawing" showing the output of the photo-detection sensor unit "being fed to" the feature data generation unit and no other "express disclosure" of "the relationship, if any," between these two components. GT Br. 53.

As the next paragraph of Gesture Technology's brief makes clear, however, this is just a repackaging of the same flawed attempt to distinguish Numazaki's first and eighth embodiments and to attack the Board's reliance on disclosures about Figures 1 and 2 to inform its understanding of Figure 78. Gesture Technology tacitly concedes that the Figure 2 analog of Figure 78's photo-detection sensor unit—the photo-detection units within the reflected light extraction unit—is a component that "ha[s] a relationship with *Numazaki*'s 'feature data generation unit.'" GT Br. 53; *see id.* at 53-54 (listing the "reflected light extraction unit" and "photo-detection unit" as elements that have this relationship). It has to: Numazaki states, in discussing Figure 1, that the photo-detection section within the reflected light extraction unit detects the received light "in order to extract the reflected light from the target object," and that "[t]he feature data generation unit 103 extracts

various feature data from the reflected light image." Appx763 10:40-42, 57-58. And Figure 2 provides the "drawing" that Gesture Technology demands, connecting the output of the photo-detection units to the feature data generation unit:



Appx659. Gesture Technology avoids this disclosure only by ignoring the fact that Figure 78's photo-detection sensor unit is performing the same functions as Figure 2's photo-detection units. As demonstrated above, Gesture Technology's position is at odds with the Board's well-supported finding of a connection between the first and eighth embodiments.

Finally, Gesture Technology raises a new and equally flawed version of its "extra circuitry" argument. According to Gesture Technology, "[i]n one instance, the Board mapped *Numazaki*'s 'reflected light extraction unit' to the claimed 'sensing means.'" GT Br. 54 (citing Appx20). That is not quite correct. As depicted in Figure 2 above, the two photo-detection units (the "photo-detection section" in the verbiage of Figure 1) are contained within the reflected light extraction unit (element 102). So, in rejecting Gesture Technology's main argument, the Board explained that "one of skill in the art would have understood Numazaki to teach that the 'photo-detection sensor unit' in Fig. 78 is or at least includes a camera/sensing means, just as Numazaki's reflected light extraction unit, with its two photo detection units in Figure 2, teach a camera/sensing means." Appx20. In other words, the Board was consistently mapping the sensing means to the photo-detection units, but pointing out that those components are housed within the reflected light extraction unit.

Gesture Technology's complaint is that the reflected light extraction unit also houses "a 'difference calculation unit,'" which Gesture Technology says "cannot be the claimed 'sensing means.'" GT

46

Br. 54-55. To begin with, the Board did not rely on this difference calculation unit as part of the "sensing means"—it relied on the "two photo-detection units," also referred to as "first and second camera units," to "read on the sensing means." Appx18 (describing petitioners' argument); *see* Appx20 (accepting petitioners' argument). Gesture Technology offers no argument—and petitioners can think of none—for why the sensing means could not be housed along with other components of the device. Furthermore, even if Gesture Technology were correct that the Board had grouped the difference calculation unit in with the cameras as "sensing means," the Board's reasoning explains why this is not problematic. Claim 1 uses open-ended "comprising" language, and it recites that the "electro-optically sensing step" is performed "using a sensing means." Appx74 25:41, 45-46. This language "does not prohibit other hardware from being involved." Appx22. Gesture Technology again has no answer to the Board's analysis.

The Court should affirm the Board's finding that claim 1 is unpatentable. And, because Gesture Technology presents no separate argument about any dependent claims, the Court should also affirm the

47

Board's finding that claims 2 through 6 are unpatentable.  *See* Appx33-34; Appx345, Appx360; Appx74 25:51-60.

## B. The Board correctly found independent claims 7 and 14 unpatentable.

### 1. The Board correctly found that Numazaki discloses the "camera means" recited in limitations 7(b) and 14(b).

Independent claims 7 and 14 recite, in relevant part, a "[h]andheld computer apparatus comprising: … a camera means." Appx74 25:61-63; *see* Appx74 26:18-21.  The Board's finding that the prior art discloses this "camera means" is supported by substantial evidence.  Although addressed in separate sections of its brief, Gesture Technology's challenges to the Board's finding that Numazaki teaches the "camera means" and "camera" in limitations 7(b) and 14(b) (respectively) rest on the same flawed basis.  *See* GT Br. 42-45, 49-50 (claim 7); GT Br. 51 (claim 14).[4]  The Court should reject both challenges.

---

[4] The parties and the Board agreed that "camera means" in claim 7 is not a means-plus-function limitation under 35 U.S.C. § 112(f).  Appx23.

The Board correctly determined that Numazaki's two photo-detection units, housed within a reflected light extraction unit as depicted in Figure 2, teach a camera. Appx23; Appx33. The Board found that, "[s]imilar to the 'sensing means' in claim 1, … Numazaki teaches a reflected light extraction unit, with two photo-detection units"—that is, the "first and second camera units"—which disclose the camera means. Appx23.

Gesture Technology disagrees and says the Board's determination that Numazaki's photo-detection sensor unit is the "camera means," Appx24, is not supported by substantial evidence. GT Br. 49. Gesture Technology reiterates its argument attempting to distinguish the "photo-detection sensor unit" of Numazaki's eighth embodiment from the "photo-detection section" of Numazaki's first embodiment. GT Br. 49-50. This argument is wrong, for reasons already explained. *Supra* 39-40.

Gesture Technology also argues that there is no express disclosure in Numazaki regarding the relationship between the feature data

generation unit and the photo-detection sensor unit.  GT Br. 42.[5]  It

claims the Board wrongly "equate[d]" the photo-detection sensor unit

with the reflected light extraction unit in Numazaki.  GT Br. 42-43

(citing Appx26; Appx24; Appx658); *see* GT Br. 43-45, 50.  Gesture

Technology asserts that, because the photo-detection sensor unit is

mentioned for the first time in Numazaki when discussing the eighth

embodiment, it is "unclear" whether the photo-detection unit is "unique"

to the eighth embodiment.  GT Br. 43 (citing Appx783 50:30).[6]

    As with claim 1, these arguments misconstrue the Board's finding

that the photo-detection sensor unit incorporates the information input

generation apparatus containing the reflected light extraction unit and

_____

[5] Although Gesture Technology presses this argument under the
"computer means" header of its brief (at GT Br. 42-43), petitioners
address it here because it concerns "camera means."

[6] Throughout its brief, Gesture Technology appears to make several
passing substantial evidence challenges by first summarizing a finding
by the Board and then asserting, in a conclusory fashion, "Even if those
findings were supported by substantial evidence—and they are not—,"
without ever explaining its parenthetical challenge or developing an
argument.  *See, e.g.*, GT Br. 42, 52.  The Court should reject
undeveloped arguments as waived.  *See SmithKline Beecham Corp. v.
Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (holding that when
"a party includes no developed argumentation on a point ... we treat the
argument as waived" (citation omitted)).

feature data generation unit.  Appx23-24.  Gesture Technology's argument is directed, wrongly, at incorporation in the other direction. It wrongly suggests that the photo-detection sensor unit of Numazaki's eighth embodiment could be "a *component* of … one of embodiments 1-7," GT Br. 43 (emphasis added), when in fact Numazaki discloses that its eighth embodiment *incorporates* embodiments one through seven. Appx24; *supra* 39-40.

Again, Figure 2 dispels any notion that Numazaki is "unclear" about the relationship between the photo-detection sensor unit and the rest of the embodiment, including the reflected light extraction unit. Figure 2 shows the reflected light extraction unit, with its two photo-detection units, capturing an image of an illuminated object, and then feeding its output to the feature data generation unit, as shown by the arrows.  Appx659; *see supra* 45 (Figure 2).

As Numazaki explains, the exemplary device shown in Figure 78 "incorporat[es] [the] input generation apparatus" illustrated in Figure 2, Appx762 8:48-51, and shows that input generation apparatus—with its feature data generation unit—in the context of a possible embodiment.  Appx733; Appx783 50:22-23.  The Board did not "equate"

(GT Br. 42, 44, 45) the photo-detection sensor unit with the reflected light extraction unit, but instead found that Figure 2's structure is incorporated into Numazaki's eighth embodiment, including the two photo-detection units (elements 109 and 110) within the reflected light extraction unit (element 102). Appx24; *see* Appx783 50:19-37; Appx1129-1130 ¶ 3. Gesture Technology's arguments disputing the Board's "camera means" finding simply overlook Numazaki's incorporation.

Next, Gesture Technology says a device "with a 'difference calculation unit'" is "not an ordinary camera." GT Br. 44 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), and arguing for a construction of "camera" based on "ordinary and customary meaning"). This reprises the "extra circuitry" argument Gesture Technology made in addressing claim 1's sensing means, which is meritless for reasons already explained. *Supra* 46-47. To the extent Gesture Technology presses this argument as a claim construction challenge, it is forfeited because Gesture Technology never pressed it before the Board. Appx339-340; *Google*, 980 F.3d at 863. Regardless, the Board properly construed "camera" in its ordinary sense. Appx9-10.

It accepted petitioners' uncontested construction that the "camera means" simply refers to a camera function. As the Board explained, "'all optical sensors obtain images by capturing light, so the claimed function is simply describing the general process that all optical sensors employ to obtain images of objects.'" Appx9 (quoting Appx139); *see* Appx1607-1608 ¶ 36.

Having forfeited any claim construction argument that would require construing a "camera" as excluding technical components like a "difference calculation unit," Gesture Technology now appears to be making a convoluted argument that goes as follows: even accepting that Numazaki discloses components of an "ordinary" camera—because it uses optical sensors to obtain images by capturing light—Numazaki nevertheless fails to render obvious a camera means because it also has the additional component of a difference calculation unit, which Gesture Technology says makes Numazaki's camera not "ordinary." But the difference calculation unit simply takes the difference between the two images captured by the first and second photo-detection units—that is, after "'optical sensors … obtain images of objects,'" Appx9—and changes

nothing about the fact that Numazaki discloses a camera means. *See* Appx15-16.

To the extent Gesture Technology's argument is a substantial-evidence challenge, it likewise fails. The Board pointed to the substantial evidence supporting its finding that a skilled artisan would have understood Numazaki to teach that the photo-detection sensor unit "obtain[s] an image, which is what [Gesture Technology] asserts is the function of a camera." Appx25. As the Board noted, the "function" of the photo-detection sensor unit in taking images of an object is taught in a number of places in Numazaki, Appx25-56, including that Numazaki's eighth embodiment describes the device "output[ting] an image." Appx26 (quoting Appx785 53:22-36).

Next, Gesture Technology argues that the "reflected light extraction unit 102 with its two photodetection units" does not "read[] on the camera means," GT Br. 45 (quoting Appx28), but this argument also falls flat. Gesture Technology suggests that the petition did not argue that the "reflected light extraction unit" was the camera means. GT Br. 45. But petitioners argued, and the Board agreed, that Numazaki's photo-detection units are housed within the reflected light

extraction unit.  Appx397, Appx399; *see* Appx14-15, Appx18-20, Appx23-24.  And petitioners demonstrated, and the Board agreed, that the photo-detection units are the camera means.  Appx145-146 & n.1, Appx161; *see* Appx23.  Gesture Technology's contention simply misconstrues petitioners' arguments and the Board's finding.  The Board's conclusion that the reflected light extraction unit, with its two photo-detection units, teach a camera is supported by substantial evidence.  Appx23.

In any event, Gesture Technology failed to contest Apple's position before the Board that the photo-detection units within the reflected light extraction unit teach the camera means, making this argument forfeited.  *Google*, 980 F.3d at 862-63; Appx23.

This means Gesture Technology's argument that Numazaki somehow does not teach a camera means because it discloses taking two images that are subtracted from each other—to obtain an image that removes extraneous image information—is likewise forfeited and meritless.  GT Br. 45-46.  It is forfeited because Gesture Technology failed to contest that the reflected light extraction unit, which subtracts the two images, teaches the camera means.  Appx763 10:40-56.  It is

also meritless because it is undisputed that the entire purpose of Numazaki's device is to image an object to determine a gesture to operate a computer. Appx763 10:57-66. That at least one camera in Numazaki captures at least two images, one illuminated, one not—which is undisputed—discloses all that is required to render the "camera means" of the '431 patent obvious.

> ### 2. The Board correctly found that Numazaki discloses the "computer means" recited in limitations 7(c) and 14(c).

Gesture Technology raises another challenge to independent claims 7 and 14, apart from its challenge regarding the "camera means" used "for obtaining an image" of an object using reflected light. Claim 7 recites that its handheld computer device also includes "computer means within [the] housing for analyzing said image to determine information concerning a position or movement of said object." Appx74 26:1-3. Claim 14 contains a similar limitation, albeit one not written in means-plus-function format. Claim 14's method includes a step of, "using said computer, analyzing said image data to determine information concerning a user input command." Appx74 26:25-26. The

Board applied the same analysis to both claims, Appx33, and Gesture Technology does the same, *see* GT Br. 51.

The Board agreed with petitioners that the "computer means" limitation of claim 7 is subject to 35 U.S.C. § 112(f).  Appx10.  The function of the computer means is "analyzing an image 'to determine positioning or movement of an object.'"  Appx10 (quoting Appx140).  And the corresponding structure includes "a computer/processor programmed (1) to identify either natural or artificial features on an object as described … or (2) to track the movement using one of the disclosed methods."  Appx10 (quoting Appx142).

Petitioners demonstrated, and the Board found, that Numazaki's feature data generation unit—element 103 in Figure 1—"corresponds to a computer or processor that has been programmed."  Appx29; *see* Appx404-405; Appx903-904; Appx1134-1135.  And this processor performs various algorithms for detecting the position of a user's finger and tracking finger movements.  Appx27 (citing Appx160-162).

On appeal, Gesture Technology raises two flawed arguments.  Both are wrong for the reasons the Board explained.

First, Gesture Technology argues that Numazaki implements the feature data generation unit "as multiple specialized hardware units, *not* as a programmed computer or processor (i.e., via software)." GT Br. 48. But, as the Board correctly recognized, Gesture Technology admitted that Numazaki disclosed that one can "realize th[e] operation of the feature data generation unit in a form of software." Appx29 (quoting Appx426-427).

Gesture Technology ignores this admission and the Board's finding. It also fails to address the evidence the Board cited for that finding. Instead, Gesture Technology offers first an unexplained string cite to Figures 21, 22, 23, and 35 of Numazaki. GT Br. 48. These figures are each "block diagram[s]" or "schematic block diagram[s]" showing "exemplary configuration[s] of a feature data generation unit." Appx761 5:65-66, 6:1-6, 6:41-42; *see* Appx678-680; Appx692. Nothing about the diagrams suggests that the blocks correspond to hardware, rather than software functions, and Gesture Technology offers no basis for interpreting them that way.

Gesture Technology's only other support for its hardware argument is a contention that Numazaki "discloses recording the

58

software for implementing the 'feature data generation unit' on a floppy disk (FD)," and there is no evidence that the portable embodiment in Figure 78 "can input floppy disks or any other type of recording medium." GT Br. 48. This argument is meritless. Numazaki says only that the feature data generation unit's software "program *may* be recorded in a recording medium such as [an] FD so that it can be distributed." Appx768 20:45-47. That optional statement cannot possibly limit Numazaki's general disclosure of a software implementation for the feature data generation unit. *Cf. Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1137 (Fed. Cir. 2011) (optional language used in specification does not limit scope of invention).

Apart from attacking the structural part of the "computer means" limitation, Gesture Technology also argues that the analysis function is missing from Numazaki. Specifically, Gesture Technology's theory is that the '431 patent claims "require[] analysis of the image obtained by the camera," whereas in Numazaki, the images obtained by the camera are first "subtracted from each other to obtain another image"—the "reflected light image"—that is then analyzed by the feature data

59

generation unit. GT Br. 46. Furthermore, Gesture Technology argues

that the only direct analysis performed on the image taken by the

cameras—the subtraction—cannot be the analysis required by the claim

because it does not involve determining information about the position

of movement of the imaged object. *Id.*

There are several problems with Gesture Technology's argument.

To start with the second part of its argument, and as the Board already

explained, no one has taken the position that the "subtraction" of the

images taken by the two photo-detection sensor units meets the

"analysis" function of the claimed "computer means." Appx29 n.14

("[T]his is not a position taken by Petitioner; and thus, this argument is

not relevant to any position taken by Petitioner."). The relevant

analysis is the one performed on the image that is output from the

reflected light extraction unit, after the subtraction has taken place.

Appx28.

Contrary to the first part of Gesture Technology's argument, there

is nothing problematic about using this analysis to satisfy the claim

limitation. Claim 7's computer means must analyze the image that is

obtained using the "camera means." *See* Appx74 25:63-26:2 ("obtaining

an image" and "analyzing said image").  Claim 14's computer likewise analyzes the "image data" that is provided by the "camera."  Appx74 26:21-26.  The "camera means" in Numazaki consists of the two photo-detection units housed in the reflected light extraction unit.  *See supra* 48-49.  Thus the image obtained and output by the camera means is the one that results from the subtraction of the two original images taken by the two photo-detection units.  Appx28.  The fact that there are multiple cameras within the "camera means" and that multiple images are involved does not take Numazaki outside the scope of claim 7; as the Board explained, "'a camera means' encompasses one or more cameras, and 'an image' encompasses one or more images."  Appx28.  Likewise claim 14's recitation of "a camera" encompasses one or more cameras.  *See KCJ Corp.*, 223 F.3d at 1356.  Gesture Technology does not dispute this conclusion, nor could it.  And because "it is the image output from the reflected light extraction unit that is analyzed by the computer means," Appx28, Gesture Technology's argument fails.

The Board's finding that Numazaki discloses the "computer means" of claim 7—and thus the "computer" analysis step of claim 14— is supported by substantial evidence, and this Court should affirm it.

Because Gesture Technology presents no separate argument about dependent claims 8-10 or 15-31, the Court should also affirm the Board's finding that those claims are unpatentable. *See* Appx33-34; Appx74 26:6-11, 26:29-62; Appx351; Appx359-361.

## C. The Board correctly found dependent claim 12 unpatentable.

Claim 12 of the '431 patent recites an "[a]pparatus according to claim 7, further including a light source for illuminating said object." Appx74 26:14-15. Petitioners argued that the term "light source" should be given its plain and ordinary meaning. Appx406-409. The Board agreed and rejected Gesture Technology's argument that a skilled artisan would understand claim 12 as meaning the light source illuminates the object at all times that the camera obtains an image of the object. Appx12. The Board noted that claims 7 and 12 are directed to an apparatus, not a method, and thus neither requires any method steps such as illuminating the object whenever the camera obtains an image of the object. Appx12-13.

The Board then concluded that Numazaki rendered claim 12 unpatentable as obvious. Appx32-33. Petitioners showed, and the

Board agreed, that claim 12 "is taught by Numazaki's 'light and camera arrangement' in 'Numazaki's handheld device.'" Appx32 (citing Appx764 11:9-23, Appx784 52:12-14). Indeed, Gesture Technology conceded before the Board that Numazaki discloses a camera that captures an image while its light source is illuminated. Appx32; *see* Appx352-353. And Gesture Technology did not separately dispute petitioners' arguments on obviousness, other than to contest whether the limitation is disclosed under Gesture Technology's preferred claim construction. Appx32-33.

Gesture Technology argues on appeal, as it did before the Board, that claim 12 requires that the light source be on at all times the camera images the object. GT Br. 37-39. It also reiterates its argument that, because Numazaki's lighting unit is not illuminated when one of its cameras captures an image of the object, Numazaki does not teach the claim. GT Br. 39-41; Appx353. Both arguments are wrong.

The Board correctly construed the "light source" in dependent claim 12 based on its plain and ordinary meaning, and substantial evidence supports the Board's conclusion that Numazaki's disclosure of

imaging the gesture illuminated both by the light source and natural light renders claim 12 unpatentable as obvious.

### 1. The Board correctly construed the "light source for illuminating said object" to have its ordinary meaning.

The Board correctly rejected Gesture Technology's limiting construction of dependent claim 12. The Board gave this term its plain and ordinary meaning: "'a light source for illuminating said object,' simply means exactly what it says[,] 'a light source for illuminating said object.'" Appx13.

Gesture Technology argues, as it did to the Board, that the claim language requires that the "light source" be on at all times for the camera means to obtain an image of the object. GT Br. 37-39. It therefore urges the following construction: "the light source of the handheld computer apparatus illuminates the object while the 'camera means' obtains an image of the object." GT Br. 39. The Board correctly rejected each of Gesture Technology's rationales for its attempt to rewrite the claim language.

For starters, as the Board correctly noted, claim 12 is an apparatus claim, not a method claim. Appx12. Accordingly, "a light

source for illuminating said object" does not require any method steps such as illuminating the object at a particular time or in a particular way. Appx12. Gesture Technology has no response to this aspect of the Board's analysis in its opening brief, and it should not be allowed to press a new argument on reply. *M.R. Pittman*, 68 F.4th at 1284.

Moreover, the plain language of claim 12 contains no requirement that the light be on every time the camera captures an image of the object. A "light source" is properly described as being "for illuminating [an] object" whether or not it is doing so constantly. As the Board found, the claim merely requires that the object be illuminated by the light source at some point in time, not that the object remain permanently illuminated. Appx12. Claim 12 says nothing about the duration or timing of illumination that would cabin the plain meaning correctly found by the Board.

Next, Gesture Technology's convoluted argument referring back to claim 7 is also wrong. GT Br. 37-38. Gesture Technology relies on the fact that independent claim 7 recites a camera means "for obtaining an image using reflected light of at least one object." According to Gesture Technology, "the most straightforward meaning of claim 12 is that the

light source … illuminates the object while the 'camera means' obtains an image of the object." GT Br. 38. But that is not what the claim language actually says. Claim 12 does not rely on claim 7 for an antecedent basis of the light source or the illumination, such that claim 12's "illuminating" term should be limited in some way by claim 7's reference to "reflected light." Appx12.

If the "reflected light" in claim 7 already had to come from the "light source" in claim 12, then claim 12 would add nothing to claim 7 and would be invalid for that reason. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("claims are interpreted with an eye toward giving effect to all terms in the claim"); *Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."). Claim 7 specifies that light reflected off an object is used to obtain an image. It says nothing about the source of that light. Claim 12 adds a light source for illuminating an object. That illumination certainly can provide the reflected light (or some portion of it), but there is nothing in the claims that says it must do so.

Indeed, Gesture Technology's argument impermissibly imports limitations from the specification into the claim. Gesture Technology argues that its construction is "consistent with the specification of the '431 Patent," which discloses operating the camera at the same time the light is on. GT Br. 38. But, as the Board explained, "[t]he mere fact that the Specification provides an example as to how the light source is used is not a sufficient reason for us to read a limitation into the claims from the Specification." Appx13; *see Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1381 (Fed. Cir. 2022) ("[A]s we have cautioned, courts ordinarily should not limit 'the claimed invention to preferred embodiments or specific examples in the specification.'" (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002))). The specification does not, for example, "reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." Appx13 (alteration omitted) (quoting *Phillips*, 415 F.3d at 1316). Nor does Gesture Technology provide any other basis for reading an embodiment from the specification into the claims.

Gesture Technology argues that there is no disclosure in the specification of the light source turning off and on, or strobing, during the operation of the camera means. GT Br. 38. But a construction can properly capture more than the specific embodiments in the specification. *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1351-52 (Fed. Cir. 2004) ("Although [patent owner's argued] features may be desirable, nowhere does the specification indicate that they are necessary"). Gesture Technology cites nothing in the '431 patent specification that would lead a person of ordinary skill to understand that the inventor had limited its claims to exclude strobing or other forms of intermittent illumination. *Compare, e.g.*, *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1342-43 (Fed. Cir. 2001) (limiting claim language when abstract of the patent made clear that claimed lumen must be coaxial, specification distinguished the prior art on this basis, "Summary of the Invention" described "the present invention"—not just an embodiment—as including a coaxial lumen, and specification stated that "all embodiments" had this feature).

Finding no support in the ordinary meaning of "the light source for illuminating said object," Gesture Technology argues that, "as a matter of common sense, the 'light source' would not serve its claimed function of 'illuminating said object' if it was not on during the operation of the camera." GT Br. 38. But none of the cited teachings says anything about ensuring that the light source remains on at all times. Instead, they simply indicate the benefit of illuminating an object. The prior art discloses lighting that is turned on at variable times as a means to increase the accuracy of determining the object. *Infra* 71-72. Thus Gesture Technology's argument fails to explain why "illuminated by the light source" should be read to require its asserted limitation, or why "common sense" would require it.

The Board properly gave the language its undisputed plain and ordinary meaning, and this Court should do the same.

> **2. Substantial evidence supports the Board's finding that Numazaki discloses the light source of claim 12.**

The Board correctly determined that Numazaki renders obvious dependent claim 12. Appx32-33. While nominally addressing substantial evidence, Gesture Technology reiterates its flawed claim

construction argument that the light source must illuminate the object while the camera means obtains an image of the object.  GT Br. 39-40. That argument should be rejected for the reasons already stated.  *See supra* 64-69.

Gesture Technology's obviousness argument also fails on the substance.  Numazaki teaches the light source limitation, because one of Numazaki's cameras images the object when the lighting unit is illuminated.  As depicted in Numazaki's Figure 2, "the light emitted by the lighting unit 101 is reflected by the target object 106, and an image is formed on a photo-detection plane of the reflected light extraction unit 102 by a photo-detection optics 107."  Appx764 11:9-23.  Gesture Technology did not dispute before the Board, and does not dispute on appeal, that Numazaki captures an image of the object when the lighting unit is on.  GT Br. 39-40 (quoting Appx764 11:20-33); *see supra* 64-65.

Gesture Technology argues Numazaki "contradicts" claim 12, because Numazaki captures images of the object both while its lighting unit is on and while it is off—whereas Gesture Technology incorrectly assumes that the lighting unit must remain on at all times that the

camera is capturing images. GT Br. 40-41. But Numazaki is entirely consistent with claim 12, because it discloses taking an image of the object while the light source is on, and claim 12 merely requires "a light source for illuminating said object." Appx74 26:14-15; *supra* 64-65. Numazaki's first photo-detection unit (element 109) captures an image of the target object illuminated by both natural light and the lighting unit (element 101), and the second photo-detection unit (element 110) captures an image of the target object illuminated only by natural light. Appx764 11:33-39. The difference between the two images represents the "reflected light from the object resulting from the light emitted by the lighting unit 101." Appx764 11:43-51. As Apple's expert testified, Numazaki's two-sensor structure is entirely consistent with the single sensor structure disclosed in claim 12 of the '431 patent, and furthers the goal of capturing the illuminated gesture by ensuring that the resulting image relays only the illuminated gesture, without extraneous image information. Appx1133-1134 ¶¶ 7-8.

This outcome in Numazaki is precisely the goal of the '431 patent: recognizing and obtaining an image of an object illuminated by a light

source.  The Board's finding of obviousness of claim 12 is supported by substantial evidence.

## III.    The Board Had Jurisdiction Over The Expired '431 Patent.

Gesture Technology argues that the Patent Office lacked jurisdiction over the '431 patent, which expired in July 2020, before any of the petitions at issue in this case were filed (in May 2021, November 2021, and January 2022).  GT Br. 55-57.  Gesture Technology's argument—which it has made in multiple appeals[7]—is contrary to the Supreme Court's and this Court's precedent and fundamentally misunderstands the constitutional role of the Patent Office and its historical practice.

As the Supreme Court has recognized, inter partes review "helps protect the public's 'paramount interest in seeing that patent monopolies … are kept within their legitimate scope.'" *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 279-80 (2016) (quoting *Precision Instr.*

_____

[7] *See* Opening Brief at 42-44*, Apple Inc. v. Gesture Tech. Partners, LLC*, Nos. 23-1501, -1554 (Fed. Cir. Oct. 18, 2023), Dkt. 30; Opening Brief at 31-33, *Gesture Tech. Partners, LLC v. Apple Inc.*, No. 23-1463 (Fed. Cir. July 17, 2023), Dkt. 19; Opening Brief at 28-29, *Gesture Tech. Partners, LLC v. Unified Patents, LLC*, No. 23-1444 (Fed. Cir. July 10, 2023), Dkt. 12.

*Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945) (alteration in *Cuozzo*)).  The decision to grant a patent is a matter of public rights, and an inter partes review "is simply a reconsideration of that grant," which "Congress has permissibly reserved" to the Patent Office to conduct.  *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018).  Gesture Technology argues, however, that the permission confirmed by *Oil States* does not apply "[w]hen a patent expires" because "the public franchise ceases to exist and the franchisee (e.g., the patent owner) no longer has the right to exclude others."  GT Br. 56.

To begin with, Gesture Technology's argument is factually incorrect.  As Gesture Technology itself admits (GT Br. 56), the patentee remains entitled to collect damages for infringement that occurred pre-expiration, subject to the six-year limitation period of 35 U.S.C. § 286.  The patentee also retains the right to license an expired patent.  *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1033 (Fed. Cir. 2015); *cf. Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372 (Fed. Cir. 2008) ("Title to a patent—even an expired

73

patent—includes more than merely the right to recover damages for past infringement.").

Gesture Technology identifies nothing in the statutory scheme governing patents generally or inter partes review specifically that would support its jurisdictional argument. 35 U.S.C. § 2(a)(1) directs that the Patent Office "shall be responsible for the granting and issuing of patents," without limiting the agency's authority upon expiration of the patent. 35 U.S.C. § 311 provides no limit on the Patent Office's authority to review expired patents.

Congress did see fit to preclude inter partes review when a petitioner has filed a civil action challenging the patent's validity, or when a patent owner's infringement suit has been pending for more than a year. 35 U.S.C. § 315(a)-(b). The fact that Congress did not similarly preclude review of expired patents strongly suggests that it did not intend such a limitation. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (the expression of one thing implies the exclusion of the other).

This Court has already addressed and rejected a related argument challenging the ability to appeal a Board decision when the patent has

expired in the interim. *Sony Corp. v. Iancu*, 924 F.3d 1235, 1239-41 (Fed. Cir. 2019). The Court explained that "[i]t is well-established that our decision … would have a consequence on any infringement that occurred during the life of the … patent," in part because "'an expired patent may form the basis of an action for past damages.'" *Id.* at 1238 n.1 (alteration omitted) (quoting *Genetics Inst. v. Novartis Vaccines*, 655 F.3d 1291, 1299 (Fed. Cir. 2011)). The Court also explained that the same consequences would flow from any decision issued on remand, which the Court ordered to allow the Board to further consider the expired patent. *Id.* Gesture Technology does not (and cannot) explain why the rationale of *Sony* would not apply equally here, whether before the Board or this Court.

Nor does Gesture Technology acknowledge or attempt to distinguish the other cases in which this Court has at least tacitly acknowledged the Board's jurisdiction over expired patents. *E.g.*, *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1279 (Fed. Cir. 2017) (noting that "[t]he Board construes claims of an expired patent in accordance with *Phillips* … [and] [u]nder that standard, words of a claim are generally given their ordinary and customary

meaning"); *Collabo Innovations, Inc. v. Sony Corp.*, 778 F. App'x 954 (Fed. Cir. 2019) (rejecting constitutional challenge to inter partes review of pre-AIA patents, in a case involving a patent that had expired).

Finally, Gesture Technology's argument ignores decades of Patent Office practice exercising jurisdiction over the validity of patents post-expiration. *See* Manual of Patent Examining Procedure § 2211 (4th ed. July 1981), https://tinyurl.com/z66kxx4n (citing 37 C.F.R. § 1.510(a) (1981)) (both allowing reexamination after a patent has expired but is "still enforceable against someone," including "the 6 years after the end of the term during which infringement litigation may be instituted" and "after the statute of limitations has expired" if "litigation is instituted within … the statute of limitations"). While not dispositive of Gesture Technology's challenge, this longstanding practice—and the fact that no Court during that time has questioned its propriety—at least provides strong reason to doubt Gesture Technology's argument, particularly where it has not bothered to address the point.

## CONCLUSION

The Court should reverse the Board's conclusion of non-obviousness as to claims 11 and 13.  At a minimum, the Court should vacate this aspect of the Board's decision and remand.  The Court should affirm the Board's decision in all other respects.

Respectfully submitted,

/s/ *Stanley Joseph Panikowski**
Stanley Joseph Panikowski, III
DLA PIPER US LLP
4365 Executive Drive, Suite 1100
San Diego, CA 92121

Matthew D. Satchwell
DLA PIPER US LLP
Suite 900
444 West Lake Street
Chicago, IL 60606

*Counsel for LG Electronics Inc.
and LG Electronics USA Inc.*

/s/ *Daniel Cooley **
Daniel Cooley
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Suite 800
1875 Explorer Street
Reston, VA 20190

Erika Arner
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001

*Counsel for Google LLC*

/s/ *Melanie L. Bostwick*
Melanie L. Bostwick
Abigail Colella
Jonas Q. Wang
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

Elizabeth R. Moulton
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105

Adam P. Sietz
Clifford T. Brazen
ERISE IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211

Paul R. Hart
ERISE IP, P.A.
5299 DTC Blvd.
Suite 1340
Greenwood Village, CO
80111
*Counsel for Apple Inc.*

\* Counsel have consented to the use of their electronic signatures herein.
January 19, 2024

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(2) and 32(b)(1) because this brief contains 13,843 words, excluding the parts of the brief exempted by Fed. Cir. R. 23(b)(2) and Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Appellant Apple Inc.*